# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 15-22925-CIV-ALTONAGA/O'Sullivan

**JOSHUA BROUGHTON**,

      Petitioner,

v.

**MICHAEL D. CREWS**,

      Respondent.

_____/

## ORDER

**THIS CAUSE** came before the Court upon Petitioner, Joshua Broughton's ("Petitioner['s]") Petition for Relief . . . ("Petition") [ECF No. 1], filed August 4, 2015. Magistrate Judge John J. O'Sullivan entered a Report . . . ("Report")[1] [ECF No. 18] on January 28, 2016, recommending the Court deny the Petition. Petitioner timely filed his Objections . . . ("Objections") [ECF No. 25] on April 6, 2016; and Respondent, Michael D. Crews, Secretary of the Florida Department of Corrections ("Respondent") filed his Response to Objections ("Response to Objections") [ECF No. 29] on May 24, 2016. The Court has carefully reviewed the Report, Objections, Response to Objections, record, and applicable law.

## I. BACKGROUND[2]

On May 13, 2009, Petitioner was found guilty in Florida state court of: (1) robbery with a

---

[1] On August 5, 2015, the Court entered an Order [ECF No. 4], referring the case to Judge O'Sullivan for a report and recommendation.

[2] The Court assumes the parties' familiarity with the facts of this case, which are detailed at length in the Report. The Court presents here only essential background information.

firearm; and (2) dealing in stolen property.  (*See* Report 27–28).[3]  The State entered a *nolle prosequi* as to a charge of unauthorized use of a credit card on the first day of trial, and Petitioner was acquitted of all other charges.  (*See id.* 19, 28).  Petitioner's conviction is the result of his involvement with co-defendant, Anthony Sanders ("Sanders") in the armed robbery of a married couple, Steven ("Steven") and Maria Marin ("Maria"), on December 14, 2007 in Miami-Dade County, Florida.  (*See id.* 2–3).  Following his conviction, Petitioner was sentenced to 30 years' imprisonment for robbery with a firearm and 30 years' imprisonment for dealing in stolen property, both sentences to run concurrently.  (*See id.* 30).

 On direct appeal, Petitioner argued the trial court erred in denying his motion for a mistrial based on statements made by the prosecution during trial.  (*See id.* 30).  The Third District Court of Appeal heard oral argument and subsequently issued a per curiam order affirming the trial court's decision without a written opinion.  (*See id.* 31).

On March 29, 2012, Petitioner, *pro se*, filed his first motion for post-conviction relief, which was denied without an evidentiary hearing.  Petitioner appealed the denial, and the Third District Court again affirmed without a written opinion.  (*See id.* 33–36).

Nearly one year later, on March 28, 2013, the *pro se* Petitioner filed a second motion for post-conviction relief.  (*See id.* 37).  The state court denied the second post-conviction motion as successive and stated: "Defendant does not allege any new grounds in his instant motion."  (*Id.* 38 (emphasis omitted) (quoting Resp., Ex. GGGGG [ECF No. 14-14])).  Judge O'Sullivan notes the "state post-conviction court's order is incorrect in its assessment that the petitioner did not raise any new grounds.  All eight grounds raised in the second motion for post-conviction relief were new grounds."  (*Id.* 39).  Petitioner appealed and the Third District Court issued a per

---

[3] Throughout this Order, the page numbers cited from documents in the record refer to the docket entry page numbers, which are at times different from the page numbers of the documents themselves.

curiam decision affirming the lower court without a written opinion.  (*See id.*).

On July 29, 2013, Petitioner filed a petition for writ of habeas corpus with the state appellate court, which was denied.  (*See id.* 39–40).  On August 4, 2015, he filed the instant Petition, asserting five grounds for relief:

a. The State Trial Court's Failure to Grant a Mistrial Following Detective Lopez's Reference (Erroneously) to Out of Court Identifications of Broughton by Non-Testifying Witnesses Violated Clearly Established State and Federal Law and Constitutes a Violation of Crawford and the Fourteenth Amendment; Counsel Provided Ineffective Assistance of Counsel in Failing to Call Garcia and Lamy as Rebuttal Witnesses ["Ground One";]

b. Trial Counsel's Failure to Seek Admission of Broughton's Co-Defendant's Exculpatory Confession Constitutes Ineffective Assistance of Counsel in Violation of the Sixth and Fourteenth Amendments, and the State Postconviction Court's Refusal to Hold an Evidentiary Hearing on the Issue was Contrary to Clearly Established Federal Law and an Unreasonable Determination in Light of the Evidence Presented ["Ground Two";]

c. Trial Counsel's Failure to Object to the 'Possession of Property Recently Stolen' Jury Instruction Constitutes Ineffective Assistance of Counsel in Violation of the Sixth and Fourteenth Amendments and the State Postconviction Court's Refusal to Hold an Evidentiary Hearing on the Issue is Contrary to Clearly Established Federal Law and an Unreasonable Determination in Light of the Evidence Presented ["Ground Three";]

d. The State's Failure to Produce the Videotaped Confession of Co-Defendant Anthony Sanders and to Preserve the '911 Call' Placed Following the Incident Constitutes a Violation of *Brady* and *Trombetta* and Deprived Broughton of Directly Exculpatory Evidence ["Ground Four"; and]

e. Trial Counsel's Failure to Call a Material, Exculpatory, and Available Alibi Witness Constituted Ineffective Assistance of Counsel in Violation of the Sixth and Fourteenth Amendments and the State Postconviction Court's Refusal to Hold an Evidentiary Hearing on the Issue was Contrary to Clearly Established Federal Law and an Unreasonable Determination in Light of the Evidence Presented ["Ground Five."]

(Memorandum in Support of Petition . . . ("Memorandum") [ECF No. 1-1] 1–2 (alterations added; bold omitted)).

Respondent, pursuant to Judge O'Sullivan's Order to Show Cause [ECF No. 5], filed a

Response . . . ("Response") [ECF No. 14]; and Petitioner filed a Reply . . . ("Reply") [ECF No. 17].  Judge O'Sullivan then entered his Report to which Petitioner timely filed his Objections, and Respondent timely filed his Response to Objections.

## II.  LEGAL STANDARDS

### A.      Habeas Corpus

A district court may not grant an application for a writ of habeas corpus on behalf of a person in state custody with respect to any claim adjudicated on the merits in state court unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  A state court's summary rejection of a claim, without discussion, qualifies as an adjudication on the merits under section 2254(d) and therefore warrants deference.  *See Wright v. Sec'y for the Dep't of Corr.*, 278 F.3d 1245, 1254 (11th Cir. 2002) ("[T]he summary nature of a state court's decision does not lessen the deference that it is due." (alteration added; citations omitted)); *Parker v. Sec'y for the Dep't of Corr.*, 331 F.3d 764, 776 (11th Cir. 2003) ("All that is required under § 2254(d)(1) is an adjudication on the merits, not a full state court opinion." (citations omitted)).

Section 2254(d)(1)'s "contrary to" and "unreasonable application" clauses are separate bases for reviewing a state court's decision.  As explained in *Putman v. Head*, 268 F.3d 1223 (11th Cir. 2001), a state court decision is "contrary to" clearly established federal law if either:

> (1) the state court applied a rule that contradicts the governing law set forth by Supreme Court case law, or

CASE NO. 15-22925-CIV-ALTONAGA/O'Sullivan

(2) when faced with materially indistinguishable facts, the state court arrived at a
result different from that reached in a Supreme Court case.

*Id.* at 1241 (citation omitted).  A state court conducts an "unreasonable application" of clearly

established federal law if:

it identifies the correct legal rule from Supreme Court case law but unreasonably
applies that rule to the facts of the petitioner's case. . . . [or] unreasonably extends,
or unreasonably declines to extend, a legal principle from Supreme Court case
law to a new context.  Notably, an "unreasonable application" is an "objectively
unreasonable" application.

*Id.* (alterations added; internal citations omitted).

## B.      Standard of Review

When a magistrate judge's "disposition" has properly been objected to, district courts

must review the disposition *de novo*.  FED. R. CIV. P. 72(b)(3).  "[T]he plain language of the

statute governing review [of the report] provides only for *de novo* review of 'those portions of

the report . . . to which objection is made.'"  *Wanatee v. Ault*, 39 F. Supp. 2d 1164, 1169 (N.D.

Iowa 1999) (alterations added) (quoting 28 U.S.C. § 636(b)(1)).  Although Federal Rule of Civil

Procedure 72 itself is silent on the standard of review, the Supreme Court has acknowledged

Congress's intent was to only require a *de novo* review where objections have been properly

filed, not when neither party objects.  *See Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It does not

appear that Congress intended to require district court review of a magistrate [judge]'s factual or

legal conclusions, under a *de novo* or any other standard, when neither party objects to those

findings." (alteration added)).  The "[f]ailure to object to the magistrate [judge]'s factual findings

after notice precludes a later attack on these findings."  *Lewis v. Smith*, 855 F.2d 736, 738 (11th

Cir. 1988) (alterations added) (citing *Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. 1982)).

CASE NO. 15-22925-CIV-ALTONAGA/O'Sullivan

## III. ANALYSIS

### A.     Ground One

Petitioner raises two claims in Ground One: (a) the state court erred in failing to grant a mistrial based on Detective Lopez's testimony ("Ground One, Claim One"); and (b) trial counsel was ineffective for failing to call George Garcia ("Garcia") and Samuel Lamy ("Lamy") as rebuttal witnesses ("Ground One, Claim Two").   (*See* Report 47).[4]    Judge O'Sullivan recommends the Court deny Ground One as procedurally defaulted.   (*See id.* 62).  Petitioner argues as "a pro se litigant, for the purposes of exhaustion, his petition should be held to a more lenient standard" (Objs. 2 (internal quotation marks and citation omitted)), and the Court should find he fairly presented his claims to the state court (*see* Objs. 2–4).

A state prisoner must first exhaust his state-court remedies before proceeding in federal court unless "there is an absence of available State corrective process or circumstances exist that render such process ineffective to protect [his] rights."  *Taylor v. Sec'y, Dep't of Corr.*, 507 F. App'x 887, 889 (11th Cir. 2013) (per curiam) (internal quotation marks and citation omitted; alteration in original).   "It is well established that federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that is independent of the federal question and adequate to support the judgment."  *Id.* (citation omitted).   When "a petitioner fails to raise his federal claims in compliance with

---

[4] Petitioner also apparently raises a claim of ineffective assistance of appellate counsel for failing to raise the trial court's denial of the motion for mistrial.  (*See* Report 47–48).  Judge O'Sullivan recommends this ground, to the extent it is a separate ground, be denied, as Petitioner's argument "is conclusory and provides the Court with no analysis of his claim."   (*Id.* 78).   Petitioner does not challenge Judge O'Sullivan's finding (*see generally* Objs.); after a review for clear error, the undersigned agrees.   In any event, even under a more rigorous standard, the Court agrees Petitioner's "two-sentence argument that appellate counsel was ineffective" (Report 78), not raised in the Petition itself, should be denied.  *See Robinson v. RockTenn CP LLC*, 986 F. Supp. 2d 1287, 1301 (N.D. Ala. 2013) (stating, regarding summary judgment: "It is not the job of the court to search through the record and make arguments for the parties.").

relevant state procedural rules, the state court's refusal to adjudicate the claim ordinarily qualifies as an independent and adequate state ground for denying federal review." *Id.* (citation omitted).

To exhaust a claim, it "is not sufficient merely that the federal habeas petitioner has been through the state courts . . . nor is it sufficient that all the facts necessary to support the claim were before the state courts or that a somewhat similar state-law claim was made." *McNair v. Campbell*, 416 F.3d 1291, 1302 (11th Cir. 2005) (internal quotation marks and citation omitted; alteration in original). "Rather, in order to ensure that state courts have the first opportunity to hear all claims, federal courts have required a state prisoner to present the state courts with the same claim he urges upon the federal courts." *Id.* (citation and internal quotation marks omitted). While courts "do not require a verbatim restatement of the claims brought in state court," they "do require that a petitioner presented his claims to the state court such that a reasonable reader would understand each claim's particular legal basis and specific factual foundation." *Id.* (citation and internal quotation marks omitted). In short, the petitioner must "afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary." *Id.* (internal quotation marks and citation omitted).

It is without question Petitioner did not explicitly raise either claim within Ground One in any of the state-court proceedings. (*See* Report 30, 33–34, 37–40 (listing claims asserted in Petitioner's state-court appeal and motions); Objs. 4 ("The facts Petitioner used to explain the Confrontation Clause violation were regarding a separate matter . . . ."); *id.* 5–6 ("The cause for the default of Petitioner's claim that trial counsel rendered ineffective assistance in his failure to call the rebuttal witness is that Petitioner could not have complied with bringing the claim in the Direct Appeal or Post-Conviction Motions because he was unclear on the legal intricacies of the

process."); *see also* Report 50 n.20).  The Court now turns to Petitioner's arguments for why the claims are nonetheless exhausted.

### i.      Claim One

Petitioner contends Detective Lopez's references to his investigation at the pawnshop, which he testified led him to Petitioner and Sanders, violate the Confrontation Clause because neither Lamy nor Garcia testified at trial.  (*See* Report 23, 47).  Regarding Ground One, Claim One, Petitioner states he raised a confrontation clause claim in his first post-conviction motion. (*See* Obj. 4).  However, this claim is about trial counsel's ineffective assistance in failing to effectively cross-examine the victim — a claim totally unrelated, both legally and factually, to the out-of-court identifications testified to by Detective Lopez.  (*Compare* Resp., Ex. ZZZ [ECF No. 14-11] 29–30 (ground three), *with* Mem. 13–14).   Simply identifying the right to confrontation, in a completely different context, is not sufficient to "afford the state court[] a meaningful opportunity to consider" the claim Petitioner now asserts.  *See McNair*, 416 F.3d at 1302 (alteration added).   Petitioner is not being "denied [his] rights due to exhaustion obscurities" (Objs. 4 (alteration added)); rather, he failed to live up to his baseline responsibility: providing the state court with the specific legal basis for his claim, and the facts underlying the claim, such that the state court could rule on the issue.[5]

Petitioner's appeal to *Smith v. Adams*, No. CIV S-07-1462 GEB EFB P., 2008 WL 3915979 (E.D. Cal. Aug. 22, 2008), is unavailing.[6]  (*See* Objs. 4).  In *Smith*, the court concluded

---

[5] Petitioner's ineffective assistance of appellate counsel claim raised in his state habeas petition comes closer to satisfying exhaustion.  (*See* Resp., Ex. EEEEEE [ECF No. 14-16] 8–16 (ground one)).  But the Eleventh Circuit has made clear claims of ineffective assistance are distinct from substantive claims for purposes of exhaustion.  *See Taylor*, 507 F. App'x at 892; *LeCroy v. Sec'y, Fla. Dep't of Corr.*, 421 F.3d 1237, 1260 n.24 (11th Cir. 2005).

[6] Petitioner does not raise *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), or *Trevino v. Thaler*, 133 S. Ct. 1911 (2013), in his Objections to Ground One, Claim One, but he did raise them in his Memorandum.

CASE NO. 15-22925-CIV-ALTONAGA/O'Sullivan

the petitioner "alleges the same legal theories supported by essentially the same facts in both the state and federal petitions." *Smith*, 2008 WL 3915979, at *5. The Court does not so conclude here. As discussed *supra* and in note 5, ground three of Petitioner's first post-conviction motion rests on a different set of facts, and ground one of his state habeas petition rests on a different legal theory. As a result, the state court did not have a meaningful opportunity to rule on the issue Petitioner now presents as Ground One, Claim One, and the claim is unexhausted.

Additionally, although Petitioner does not directly address the issue in his Objections, the Court finds the procedural default should not be excused. A "petitioner may obtain federal review of a procedurally defaulted claim if he can show both 'cause' for the default and actual 'prejudice' resulting from the default." *Johnson v. Sec'y*, No. 2:12-cv-99-FtM-29DNF, 2014 WL 5177474, at *4 (M.D. Fla. Oct. 14, 2014). To establish cause, a petitioner must "demonstrate that some objective factor external to the defense impeded the effort to raise the claim." *Id.* (citing *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999)). Petitioner has not demonstrated cause — no external factor prevented him from raising the issue on appeal. His *pro se* status is no help either, as the issue could have been raised on direct appeal, when he was represented by counsel. *See Johnson*, 2014 WL 5177474, at *9 (stating cause can only be shown where the factor cannot be fairly attributed to the petitioner (citing *Coleman v. Thompson*, 501 U.S. 722, 727 (1991))). Petitioner's claim is therefore barred from federal review.[7]

---

*Martinez* and *Trevino* only apply to ineffective assistance of counsel claims and not to substantive claims. *See Hamm v. Comm'r, Ala. Dep't of Corr.*, 620 F. App'x 752, 777 (11th Cir. 2015) (per curiam) (declining to extend *Martinez* and *Trevino* to substantive claims); *Gore v. Crews*, 720 F.3d 811, 816 (11th Cir. 2013) (per curiam) ("By its own emphatic terms, the Supreme Court's decision in *Martinez* is limited to claims of ineffective assistance of trial counsel . . . ." (alteration added)).

[7] Even if the Court were to find Ground One, Claim One exhausted, the Court would deny the claim on the merits. Petitioner admits "determining whether *Crawford* [*v. Washington*, 541 U.S. 36 (2004)] controls to prohibit testimony is not a straightforward question . . . [and one] application of *Crawford* yet unheard by the U.S. Supreme Court is officer testimony referencing their investigation." (Reply 10–11

> ii.      **Claim Two**

As for Ground One, Claim Two, Petitioner focuses largely on the *Martinez* and *Trevino* line of cases, arguing the cases have "carved a leniency exception for habeas petitioners who were *pro se* or whose trial counsel was ineffective." (Reply 3). Judge O'Sullivan finds *Martinez* and *Trevino* inapplicable. (*See* Report 54).

"Generally speaking, because a prisoner has no constitutional right to counsel in state post-conviction proceedings, a petitioner cannot rely on the ineffective assistance of post-conviction counsel (or the lack of counsel) to establish 'cause' sufficient to excuse a procedural default." *Planas v. Sec'y, Dep't of Corr.*, No. 15-10691, 2016 WL 3230686, at *1 (11th Cir. June 13, 2016) (per curiam) (citing *Coleman*, 501 U.S. at 756). But in *Martinez*, "the Court decided that a prisoner may overcome a procedural default of an ineffective-assistance-of-trial-counsel claim when (1) the state requires such claims be raised only in a collateral proceeding; (2) the state [] appoints no counsel for the initial-review collateral proceeding . . . ; and (3) the underlying ineffective-assistance-of-trial-counsel claim has some merit." *Id.* (alterations added) (citing *Martinez*, 132 S. Ct. at 1318).

Judge O'Sullivan concludes *Martinez* does not apply to Ground One, Claim Two, as the failure to raise the claim "was not due to any performance errors by post-conviction counsel because there was no post-conviction counsel." (Report 56 (emphasis omitted)). While

---

(alterations added)). He also admits "some federal courts have approved the practice" of officers "referencing their investigation, or witness statements provided during their investigation . . . [when it aids] the jury's understanding of the investigation's purpose or the circumstances under which the officer acted." (*Id.* 11–12 (alterations added)); *see also United States v. Cruz-Diaz*, 550 F.3d 169, 176–77 (1st Cir. 2008). As a result, any state court decision denying the claim could not be said to be contrary to Supreme Court case law or an unreasonable application of federal law. Petitioner's reliance on *Harris v. Wainwright*, 760 F.2d 1148 (11th Cir. 1985), is unavailing (*see* Mem. 15–17), as *Harris* predates the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") (and thus the deference the AEDPA requires) and is not Supreme Court case law. *See Putman*, 268 F.3d at 1241 (describing AEDPA deference).

*Martinez* and *Trevino* should be read narrowly, *see, e.g.*, *Gore*, 720 F.3d at 816, the Report reads them too narrowly.  The Supreme Court stated "a prisoner may establish cause for a default of an ineffective-assistance claim in two circumstances.  The first is where the state courts did not appoint counsel . . . .  The second is where appointed counsel . . . was ineffective."  *Martinez*, 132 S. Ct. at 1318 (alterations added); *see also Planas*, 2016 WL 3230686, at *1 (stating a prisoner can overcome a procedural default under *Martinez* if the state does not appoint counsel).

To excuse a procedural default,[8] a petitioner must show his claim has some merit and he suffered prejudice.  *See Martinez*, 132 S. Ct. at 1316.[9]  Assuming without deciding Petitioner could establish cause for the default, he has failed to demonstrate prejudice.  "To establish prejudice, a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different."  *Au v. Buss*, No. 2:11-cv-103-Ftm-29UAM, 2014 WL 842446, at *5 (M.D. Fla. Mar. 4, 2014) (citation omitted).  It is not enough to show the possibility of prejudice; rather the constitutional error must have "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Hamm*, 620 F. App'x at 762 (internal quotation marks, emphasis, and citation omitted).

Petitioner fails to demonstrate how calling Lamy and Garcia would have resulted in the reasonable possibility of a different outcome.  Detective Lopez did not testify as to the details of how his investigation at the pawnshop led him to Sanders and Petitioner.  (*See* Report 23–26). Petitioner contends Detective Lopez's testimony created an inference someone at the pawnshop

---

[8] For *Martinez* to apply, a claim must be not only unexhausted but also procedurally barred.  *See Gore*, 720 F.3d at 815.  The unexhausted claim would be barred here as a successive, untimely post-conviction motion.  *See Hamlett v. Sec'y, Dep't of Corr.*, No. 8:13-cv-1923-T-33AEP, 2015 WL 1815861, at *8 (M.D. Fla. Apr. 22, 2015).

[9] Procedural default can also be excused to correct a fundamental miscarriage of justice, that is, in the extraordinary case where a constitutional violation results in the conviction of someone actually innocent. *See Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003).  Petitioner does not argue anywhere in his Objections his defaulted claims should be excused on this basis.

— either Lamy or Garcia — identified Petitioner as someone involved in the crime. (*See* Mem. 15). But Petitioner fails to establish having Lamy or Garcia testify would have discredited Detective Lopez to the degree it would have reasonably resulted in a different outcome.

Petitioner argues Garcia would have testified he does not know anyone by the name of Joshua Broughton, and Sanders came to the pawnshop alone. (*See id.* 17). Yet, had Garcia testified, he could have been potentially impeached by his own prior inconsistent statement, in which he told police Petitioner was in the pawnshop with Sanders when Sanders sold the cell phone to Lamy. (*See* Resp., Ex. N [ECF No. 14-2] 103; Report 6); *cf. Pearce v. State*, 880 So. 2d 561, 570–71 (Fla. 2004) (outlining the ways a witness can be impeached with a prior inconsistent statement). Moreover, if Lamy testified he dealt with Garcia directly and did not see either Sanders or Petitioner in the pawnshop (*see* Mem. 17), such testimony would have been consistent with Detective Lopez's prior testimony on the issue. (*See* Report 12 n.6).

To the extent Petitioner's trial counsel would have called both Lamy and Garcia, there is the distinct possibility their testimony would have been contradictory regarding how the cell phone sale occurred, such that neither witness would have been seen as particularly credible. (*See* Resp., Ex. QQ [ECF No. 14-5] 56 (Sanders's counsel stating, during motion to suppress hearing: "Mr. Lamme [sic], the witness who bought the phone[,] completely contradicts the statement of Mr. Garcia." (alteration added))). Additionally, as Judge O'Sullivan notes, Steven identified Petitioner in a photo lineup, and he testified at trial he was sure of his identification, further supporting Petitioner's conviction. (*See* Report 77). Accordingly, Petitioner fails to show Lamy and Garcia's testimony would have reasonably resulted in a different outcome.

Even assuming Ground One, Claim Two is exhausted or otherwise excused, Claim Two should be denied on the merits. Judge O'Sullivan finds the decision not to call Lamy or Garcia

— and thus draw attention to Detective Lopez's investigation and away from the discrepancies between Steven's description of Petitioner and Petitioner's physical attributes — may have been a strategic decision.  (*See* Report 75).

Under *Strickland v. Washington*, 466 U.S. 668 (1984), "courts [must] give considerable deference to trial counsel's judgment."  *Hittson v. GDCP Warden*, 759 F.3d 1210, 1248 (11th Cir. 2014) (alteration added; citation omitted).  "A petitioner must establish that no competent counsel would have taken the action that his counsel did take."  *Id.*  (alteration, emphasis, and citation omitted).  As discussed *supra*, there are valid reasons why Petitioner's trial counsel may not have called Lamy and Garcia.   Garcia could have been impeached and his prior inconsistent statement would have identified Petitioner; Lamy's testimony would not necessarily have been inconsistent with Detective Lopez's; and it is possible Garcia and Lamy would have contradicted each other regarding how the sale occurred.  *See supra*.

Moreover, calling Lamy or Garcia would have allowed Detective Lopez to further testify about the details of his investigation — which were largely left out of his trial testimony — and only distracted from trial counsel's defense strategy.  (*See* Report 76).  "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was so patently unreasonable that no competent attorney would have chosen it."  *Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007) (internal quotation marks and citation omitted).  Petitioner fails to meet this standard.[10]  *See*

---

[10] Petitioner cites to several cases that state it is error to deny admission of evidence that tends to prove a defendant's innocence.  (*See* Objs. 11–12).  These cases do not involve ineffective assistance of counsel claims and instead have to do with trial courts excluding evidence.  (*See id.*).  They are irrelevant to the issue at hand.  While Petitioner undoubtedly has the right to present relevant, admissible evidence at trial, the question is whether his trial counsel's decision not to call certain witnesses rendered his representation ineffective.  A trial counsel's decision not to introduce relevant evidence that might create a reasonable doubt does not automatically mean counsel was ineffective.  *See Miranda v. United States*, 433 F. App'x 866, 869 (11th Cir. 2011) (per curiam) ("So, given the strength of Cuevas's testimony in not placing

*Miranda*, 433 F. App'x at 869 ("Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, that will seldom, if ever, serve as grounds to find counsel constitutionally ineffective." (internal quotation marks and citation omitted)).

Additionally, for the reasons stated *supra* regarding exhaustion, Petitioner's claim for ineffective assistance of counsel fails to demonstrate prejudice.

### B.     Ground Two

In Ground Two, Petitioner asserts his trial counsel was ineffective for failing to seek admission of exculpatory statements made by his co-defendant, Sanders. (*See* Pet. 8). Judge O'Sullivan concludes Petitioner is not entitled to relief on Ground Two. (*See* Report 95–96).

Petitioner objects to Judge O'Sullivan's findings, arguing the state court's refusal to hold an evidentiary hearing on his claim resulted in a denial of due process. (*See* Objs. 16).[11] Petitioner relies on two Ninth Circuit cases for the proposition a state court's refusal to hold an evidentiary hearing can render the court's determination of the facts unreasonable, thereby warranting habeas relief. (*See id.*). Despite what may be contrary Ninth Circuit precedent, the

---

Miranda in the conspiracy and the potential harmful testimony of the uncalled witnesses, we cannot say that counsel's decision to rely on Cuevas's testimony, instead of calling witnesses, was unreasonable." (citation omitted)).

[11] Petitioner also objects to Judge O'Sullivan's finding Petitioner's claim of state court error in admitting evidence of Steven and Katalina Cruz's ("Cruz['s]") identifications of Sanders in a photo lineup, as well as Cruz's testimony she observed Sanders on the day of the robbery, is not properly exhausted. (*See* Objs. 13). To the extent this is a separate ground for error, as both Judge O'Sullivan and Petitioner treat it, it is not properly asserted in the Petition. (*See* Pet. 8). Nowhere does Ground Two mention error in allowing Steven's and Cruz's identification of Sanders or Cruz's testimony regarding Sanders. Rather, the issue is raised in a single paragraph in the Memorandum. (*See* Mem. 25). Thus, the claim is waived.

In any event, despite Petitioner's contention, the claim was never raised before the state court. Petitioner points to two pages in Appellant's Response to States [sic] Response (*see* Resp., Ex. NNNN [ECF No. 14-13] 58–59; Objs. 13); however, those pages do not state any error in admitting Cruz's testimony and do not mention Steven's or Cruz's photo lineup identifications at all. Thus, the claim is unexhausted and procedurally barred. Finally, Petitioner asks the Court to excuse the lack of exhaustion because he "was unaware that he had to include" it and he lacked "knowledge of the intricacies involved." (Objs. 14). For the reasons stated as to Ground One, Claim One, *supra*, this argument is unpersuasive.

CASE NO. 15-22925-CIV-ALTONAGA/O'Sullivan

Eleventh Circuit is clear: a petitioner's claim "the state court violated his due process rights by failing to conduct an evidentiary hearing . . . does not state a claim on which this Court may grant habeas relief." *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1366 (11th Cir. 2009) (alteration added); *cf. Valdez v. Cockrell*, 274 F.3d 941, 959 (5th Cir. 2001) (finding a "full and fair hearing is not a prerequisite to the application of" the AEDPA's deferential framework).  Petitioner does not address this binding Eleventh Circuit precedent.  The state court's refusal to hold an evidentiary hearing on Ground Two did not deny Petitioner due process.

Petitioner next argues Ground Two meets the requirements of *Strickland*.  (*See* Objs. 17). Judge O'Sullivan finds, after conducting a *de novo* review, Petitioner fails to demonstrate his trial counsel's performance was deficient or Petitioner was prejudiced by trial counsel's performance.  (*See* Report 91–95).  Petitioner asserts his trial counsel was unreasonable for failing to introduce Sanders's statement someone named Willie Davis robbed Steven and Maria. (*See* Objs. 17).

Under *Strickland*, "courts [must] give considerable deference to trial counsel's judgment."  *Hittson*, 759 F.3d at 1248 (alteration added; citation omitted).  "A petitioner must establish that no competent counsel would have taken the action that his counsel did take."  *Id.* (alteration, emphasis, and citation omitted).  Judge O'Sullivan finds Petitioner's trial counsel was not deficient in failing to introduce Sanders's statement because doing so would have opened the door to other unfavorable testimony from Sanders.  (*See* Report 92).  While the one statement Petitioner identifies may have been good for him, much of Sanders's other testimony was not. (*See id.* 17–19).  Trial counsel's decision Sanders's testimony would have been "more aggravating than mitigating is precisely the type of game-time decision that *Strickland* insulates from Monday-morning quarterbacking."  *Hittson*, 759 F.3d at 1248 (citation omitted).

CASE NO. 15-22925-CIV-ALTONAGA/O'Sullivan

Petitioner's argument trial counsel "could have attacked the credibility of Mr. Sanders' statements" entirely misses the point.  (Objs. 17).  None of Sanders's statements were introduced at trial.  (*See* Report 20; *see also id.* 21–27).  Instead, if trial counsel had introduced Sanders's statement at trial, the State could have then introduced the multiple statements implicating Petitioner in the crime, making trial counsel's mistaken identity defense all the more difficult.  (*See* Report 93).  Petitioner fails to demonstrate trial counsel's decision to avoid this risk is one no competent counsel would have made.

Petitioner's argument he suffered prejudice is similarly without merit.  (*See* Objs. 18).  To show prejudice, Petitioner must demonstrate but for trial counsel's errors, the result of the proceeding would have been different.  *See DeYoung v. Schofield*, 609 F.3d 1260, 1284 (11th Cir. 2010) (citation omitted).  Because introduction of Sanders's statement would have opened the door to other harmful testimony, likely outweighing any benefit Petitioner would have received, the Court agrees with Judge O'Sullivan Petitioner has not suffered prejudice.  *See id.* at 1291 (finding no prejudice where introduction of evidence "would have opened the door to harmful testimony which may well have eliminated any mitigating weight").

Petitioner does not offer any persuasive argument to the contrary, simply stating Sanders's statement was a "chance to establish reasonable doubt" and would have allowed Petitioner "to attack the credibility and establish the falsity of Detective Lopez's testimony." (Objs. 18).  But this treats Sanders's statement in isolation, without considering the other, unfavorable testimony that would have accompanied it and supported Detective Lopez's testimony.  Moreover, Petitioner fails to demonstrate Sanders's statement would have so discredited Detective Lopez's testimony such that a jury would have reached a different result.

CASE NO. 15-22925-CIV-ALTONAGA/O'Sullivan

### C.      Ground Three

In Ground Three, Petitioner contends his trial counsel was ineffective in failing to object to the jury instruction on possession of property recently stolen.  (*See* Report 97).  Specifically, he objects to two inference instructions: (1) allowing the jury to infer the defendant knew the property was stolen by the fact the defendant possessed it without a satisfactory explanation; and (2) allowing the jury to infer knowledge where the defendant bought or sold the property at a price substantially below market value.  (*See id.* 98).  Petitioner also argues the state court's failure to hold an evidentiary hearing entitles him to relief.  (*See id.* 97).  Judge O'Sullivan determines Petitioner is not entitled to relief on Ground Three.  (*See id.* 109).

In his Objections, Petitioner makes the same argument regarding the state court's failure to hold an evidentiary hearing as he made regarding Ground Two.  For the same reasons already discussed, Petitioner is not entitled to relief.  *See Carroll*, 574 F.3d at 1366.  Moreover, because Petitioner raised Ground Three in his first post-conviction motion and the state court denied it by (*see* Report 33–36), the Court agrees with Judge O'Sullivan the state court's decision regarding Ground Three was a decision on the merits warranting deference under the AEDPA.  (*See id.* 102–03); *see also Harrington v. Richter*, 562 U.S. 86, 99 (2011); *Shelton v. Sec'y, Dep't of Corr.*, 691 F.3d 1348, 1353 (11th Cir. 2012) ("Under *Harrington*'s general rule . . . a state court's simple one-word affirmance is presumed to be an adjudication on the merits of the petitioner's claim." (alteration added)).

Next, Petitioner argues his trial counsel should have objected to the jury instruction because the State failed to make a *prima facie* case for possession of property recently stolen.  (*See* Objs. 21–22).[12]  When Ground Three was raised in state court, the court denied Petitioner's

---

[12]  Both the Report and Petitioner quote from the incorrect jury instruction regarding Petitioner's conviction for dealing in stolen property.  (*See* Report 97–98; Objs. 20).  Petitioner was found guilty of

claim and found he failed "to articulate how his counsel's performance was deficient." (Report 105).

"Where the performance prong of *Strickland* is concerned, habeas review is indeed doubly deferential." *Evans v. Sec'y, Dep't of Corr.*, 703 F.3d 1316, 1333 (11th Cir. 2013) (Jordan, J., concurring) (citation omitted). Petitioner's support for his assertion the State failed to make a *prima facie* case is the completely unsupported statement: "Detective Lopez falsified his reports and lied in his deposition to implicate Petitioner in dealing in stolen property." (Objs. 21). Petitioner argues Detective Lopez's "inconsistent statements" (*id.*), fail to support a charge of dealing in stolen property. But inconsistent statements, at the very least, mean there was *some* evidence to support the charge, even if Petitioner believes it should not have been credited. Given the double deference accorded to the state court's decision, the Court cannot say the state court's decision was contrary to or an unreasonable application of clearly established federal law.

Petitioner also argues indirect or non-exclusive possession is insufficient to include the instruction regarding possession of stolen property without an adequate explanation. (*See id.*). But the State offered evidence of direct and exclusive possession. (*See* Report 106, 108).

Finally, Petitioner asserts the jury instruction regarding buying or selling property at a price substantially below market value was erroneous because there was no evidence at trial as to the market value of the ring. (*See* Objs. 22). On this point, the issue is a closer call. *See Tatum v. State*, 857 So.2d 331, 334–35 (Fla. 2d DCA 2003) (holding there must be a factual predicate underlying inference instruction for possession of stolen property charge). While Judge O'Sullivan notes Detective Lopez testified Petitioner told him he sold the ring to his father for

---

dealing in stolen property, not theft. (*See* Resp., Ex. HHH [ECF No. 14-9] 127–31). Nonetheless, the relevant inference instructions are the same in both instances. (*Compare* Resp., Ex. GGG [ECF No. 14-9] 107–08, *with id.* 114). Curiously, while the inference instruction regarding value is present in the jury instructions (*see id.* 114), the state judge did not read that instruction to the jury in reference to the dealing in stolen property charge (*see* Resp., Ex. CCC [ECF No. 14-9] 54–55).

approximately forty dollars (*see* Report 108), neither the Report nor Respondent identifies any direct evidence regarding the market value of the ring.  The only apparent evidence regarding value came from Steven, who testified he did not know the replacement value of the ring, but answered it was not over one thousand dollars.  (*See* Report 22).[13]

The jury was instructed it could assume Petitioner knew the property he bought or sold was stolen if he bought or sold the property "at a price substantially below market value."  (Objs. 20 (citation omitted)).  To be entitled to the inference, there must have been a factual predicate. *See Tatum*, 857 So.2d at 334.  There are certainly some Florida cases, albeit in the grand theft context, which would suggest Steven's testimony is insufficient to establish value.  *See, e.g.*, *I.T. v. State*, 796 So. 2d 1220, 1222 (Fla. 4th DCA 2001) (reversing conviction for state's failure to present testimony as to market value of stolen items; collecting cases).  *But see Weatherspoon v. State*, 419 So. 2d 404, 404–05 (Fla. 2d DCA 1982) (stating in some cases testimony regarding value is unnecessary "where reasonable persons could not doubt the value of the [property] as described to the jury was $100 or more" (alteration added; internal quotation marks and citation omitted)).  Nonetheless, Petitioner has not presented the Court with any direct case law such that the undersigned can determine — especially considering the double deference owed — the state court's decision was contrary to federal law or an unreasonable determination of the facts.

Assuming without deciding the jury instruction regarding purchasing or selling stolen property at a price substantially below fair market value lacked a factual predicate, Petitioner is still not entitled to relief.  Generally, errors in jury instructions are subject to harmless error analysis.  *See United States v. Thomas*, 443 F. App'x 501, 502 (11th Cir. 2011) (per curiam); *see also Pulido v. Chrones*, 629 F.3d 1007, 1012 (9th Cir. 2010) (applying harmless error analysis to

---

[13] Detective Lopez testified the ring was worth significantly more than the forty dollars Petitioner sold it for.  (*See* Resp., Ex. BBB [ECF No. 14-8] 115).  However, the state court sustained Petitioner's counsel's objection regarding this testimony.  (*See id.*).

claim of jury-instruction error in habeas proceeding).   On collateral review, a federal constitutional error is harmless unless "the error had a substantial and injurious effect or influence on the jury's verdict." *Burns v. Sec'y, Fla. Dep't of Corr.*, 720 F.3d 1296, 1305 (11th Cir. 2013) (internal quotation marks and citation omitted).   "To show prejudice [], there must be more than a reasonable possibility that the error contributed to the conviction." *Id.* (alteration added; internal quotation marks and citation omitted).

Applying these standards to this case, any error in instructing the jury it could infer Petitioner knew the ring was stolen because he bought or sold it substantially below market value was harmless.   There were two alternative ways in which the jury could have convicted Petitioner of dealing in stolen property.   First, the jury could have relied on the other inference instruction, namely, a person in possession of stolen property can be assumed to have known the property was stolen unless he provides a satisfactory explanation.   (*See* Objs. 20 (citing instruction)).   As discussed, there was ample evidence introduced regarding Petitioner's possession of the property.   (*See* Report 106, 108).   Second, and more importantly, the jury did not need to use either inference to determine Petitioner knew the ring was stolen, as the jury convicted him of robbery with a firearm (*see* Resp., Ex. HHH 127), *i.e.*, it could have found Petitioner knew the ring was stolen because he, along with Sanders, stole it.   Accordingly, there is not a reasonable possibility, let alone more than a reasonable possibility, the error contributed to the conviction.   *See Burns*, 720 F.3d at 1305.

### D.    Ground Four

In Ground Four, Petitioner contends the State violated his due process rights by destroying or failing to preserve: (1) Sanders's videotaped confession; and (2) the tape from the 911-call following the robbery.   (*See* Report 109).

CASE NO. 15-22925-CIV-ALTONAGA/O'Sullivan

Judge O'Sullivan expresses "doubts" as to whether Ground Four is reviewable.  (*Id.* 109 n.32).  Petitioner did not raise *Brady*[14] violations regarding Sanders's confession or the 911-tape in his initial post-conviction motion; as a result, Judge O'Sullivan notes the claim is possibly procedurally defaulted.  (*See id.*).  However, because Respondent did not raise the issue, Judge O'Sullivan goes on to review the merits.  (*See id.*).

While Petitioner failed to raise the 911-call issue in his initial post-conviction motion, he did raise it as ground one in his second motion.  (*See* Resp., Ex. EEEEE [ECF No. 14-14] 10–12; *see also* Report 109 n.32).  The state court denied Petitioner's second post-conviction motion on state procedural grounds.  (*See* Report 109 n.32).  Because Respondent failed to raise the procedural bar defense in its Response (*see* Resp. 64–78), and the state court denied Ground Four in Petitioner's second post-conviction motion on state procedural grounds (*see* Report 109 n.32), the procedural bar defense is waived as to the 911-call.  *See Smith v. Sec'y, Dep't of Corr.*, 572 F.3d 1327, 1340 (11th Cir. 2009).

By contrast, Petitioner never raised a claim for a *Brady* violation regarding Sanders's videotaped confession.  Petitioner asserts Ground Four corresponds to the second ground in his first post-conviction motion and is therefore exhausted.  (*See* Objs. 23).  Ground Two of Petitioner's first post-conviction motion asserts a claim of ineffective assistance of counsel based on counsel's failure to introduce some of Sanders's statements at trial.  (*See* Resp., Ex. ZZZ [ECF No. 14-11] 16).

While the first post-conviction motion addresses statements Sanders purportedly made during an interview, Petitioner does not mention the State failed to produce the videotaped confession.  (*See id.* 16–29).  In his second post-conviction motion, Petitioner raised a claim for failure to produce a copy of his videotaped interrogation.  (*See* Resp., Ex. EEEEE 25–28).  But

---

[14] *Brady v. Maryland*, 373 U.S. 83 (1963).

CASE NO. 15-22925-CIV-ALTONAGA/O'Sullivan

there is no mention of any videotaped confession involving Sanders, let alone a *Brady* violation for failing to produce it. (*See id.*).

In contrast to claims which are denied on state procedural grounds, the State does not implicitly waive the procedural bar defense where the claim is unexhausted. *See Smith*, 572 F.3d at 1339. Petitioner failed to exhaust his claim regarding Sanders's taped confession, *i.e.*, he failed to "afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary." *McNair*, 416 F.3d at 1302 (internal quotation marks and citation omitted). Because his unexhausted claim would now be procedurally barred as untimely and successive, Ground Four, as it relates to the Sanders videotaped confession, is procedurally barred.

Procedurally defaulted claims may still be considered by a federal court if the petitioner can demonstrate cause and prejudice. *See Henderson*, 353 F.3d at 892. "To establish 'cause' for procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." *Id.* (citation omitted). Petitioner fails to any identify any external factor — for any of his claims, in the Memorandum, Reply, or Objections — that prevented him from properly raising his claims in the state court. Instead he relies on the fact he was a *pro se* litigant, unfamiliar with the requirements of legal procedure. (*See, e.g.*, Objs. 26). This is not an "external" factor and thus does not qualify as cause, *see Esty v. McDonough*, No. 3:04cv363/MCF/EMT, 2007 WL 1294602, at *16 (N.D. Fla. May 1, 2007) (stating lack of counsel or ignorance of procedure does not alone constitute cause);

22

in any event, Ground Four could have been raised on direct appeal when Petitioner was represented by counsel.[15]

Judge O'Sullivan also finds Ground Four should be denied on the merits. To establish a claim under *Brady*, 373 U.S. 83, a petitioner must show: (1) the evidence at issue is favorable, either because it is exculpatory or impeaching; (2) the evidence was suppressed, either willfully or inadvertently; and (3) prejudice ensued. *See Strickler v. Greene*, 527 U.S. 263, 281–82 (1999).

To establish a due process violation under *California v. Trombetta*, 467 U.S. 479 (1984), where the state fails to preserve evidence, the "evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *United States v. Gayle*, 608 F. App'x 783, 790 (11th Cir. 2015) (per curiam) (citation omitted). Additionally, the petitioner must show the failure to preserve was done in bad faith. *See id.*[16] The Court addresses the Sanders confession first, followed by the 911-call.

### i.    Sanders's Videotaped Confession

Judge O'Sullivan recommends denying Ground Four as to the Sanders confession because Petitioner fails to demonstrate prejudice. (*See* Report 118). Petitioner contends there is a videotaped confession of Sanders, wherein Sanders admits to being in possession of Steven's ring and stated a man named Willie Davis was involved in the robbery. (*See id.* 110). No

---

[15] Additionally, *Martinez* cannot help Petitioner establish cause. As stated *supra* in note 6, *Martinez* and *Trevino* only apply to ineffective assistance of counsel claims and not to substantive claims. *See Hamm*, 620 F. App'x at 777; *Gore*, 720 F.3d at 816.

[16] Petitioner argues under *Trombetta*, a showing of bad faith is not required in these circumstances. (*See* Mem. 31). This is incorrect, as Judge O'Sullivan notes. (*See* Report 121–22); *see also Gayle*, 608 F. App'x at 790 ("Supreme Court precedent is clear that a defendant must show bad faith . . . to prevail on a due process claim based on failure to preserve evidence." (alteration added; citation omitted)).

CASE NO. 15-22925-CIV-ALTONAGA/O'Sullivan

videotape has been produced, although the State did produce previously undisclosed photographs of Sanders in an interrogation room.  (*See id.* 111).  Petitioner asserts the State "failed to meet its duty of preserving evidence."  (Objs. 24).  Petitioner believes the photographs prove Sanders's confession was videotaped, despite Detective Lopez's testimony to the contrary.  (*See* Report 111–12).

Petitioner's claim fails for a number of reasons.  At the outset, it is not clear a tape of Sanders's confession ever existed.  Detective Lopez testified the confession was not videotaped, and Sanders testified he did not want to give a taped confession.  (*See* Resp. 65–69 (record citations omitted)).  Respondent does not acknowledge a tape ever existed.  (*See id.* 65–78). While the two photographs produced by the State increase the probability a tape of Sanders's confession existed, it is not at all clear one did.  As Respondent argues, all the photos demonstrate is Sanders was filmed at some point (*see id.* 71) — it is possible someone turned off the recording equipment once Sanders stated he did not want to give a taped statement.  Thus, Petitioner fails to demonstrate there was any evidence which was suppressed at all.

Next, as Judge O'Sullivan notes, Petitioner fails to demonstrate prejudice here for the same reasons he fails to demonstrate prejudice as to Ground Two.  (*See* Report 118–19); *see also Tanzi v. Sec'y, Fla. Dep't of Corr.*, 772 F.3d 644, 662 (11th Cir. 2014) (noting the test for prejudice under *Strickland* and *Brady* are the same).  As stated in the discussion concerning Ground Two, introducing Sanders's testimony would have opened the door to much more harmful testimony from Sanders.  *See supra*; (*see also* Report 119).  In light of the potentially harmful testimony which would have accompanied any introduction of Sanders's taped confession, including Sanders's deposition testimony and testimony at the evidentiary hearing on the motion to suppress, Petitioner suffered no prejudice.  *See DeYoung*, 609 F.3d at 1291

24

(finding no prejudice where introduction of evidence "would have opened the door to harmful testimony which may well have eliminated any mitigating weight").

Finally, regarding his claim under *Trombetta*, Petitioner fails to demonstrate bad faith by the State in not preserving the videotape. *See Gayle*, 608 F.3d at 790. Petitioner contends bad faith is evident from Lopez's "contradictory and misleading testimony" and from the production of the photographs. (*See* Mem. 31). Detective Lopez's "contradictory and misleading testimony" consists of his statements the interview was not memorialized because Sanders did not want a recorded statement and Detective Lopez did not want to memorialize it either. (*See id.* 30). Lopez then "contradicted himself" by testifying he always likes to obtain a taped statement. (*Id.*). These statements are not contradictory and certainly not misleading. It is perfectly consistent to generally like to have a taped statement and not want one in certain situations, *e.g.*, where the interviewee is unwilling to give a taped statement. Moreover, as discussed, the photos do not conclusively demonstrate a video existed and are perfectly consistent with a video not existing. Petitioner's other assertions, such as stating Detective Lopez was familiar with the Broughton family and made Petitioner the target regardless of the evidence, are completely unsupported. Accordingly, he fails to demonstrate bad faith.

### ii.        The 911-Call

Applying the same framework to the 911-call, Petitioner fails to demonstrate he is entitled to relief under either *Brady* or *Trombetta*. Petitioner contends a 911-call was placed the night of the robbery, and the call "contained indications that the perpetrators of the robbery were wearing masks." (Mem. 29). His counsel made a timely request for the 911-recording but no tape was ever produced. (*See* Report 119).

Judge O'Sullivan finds Petitioner's *Brady* claim should fail because he does not meet the suppression prong of *Strickler*.  (*See id.* 123–24).  He notes Petitioner indicated, in an undated letter to his trial counsel, a conversation with his counsel took place sometime between December 19 and 21, 2007, during which he told counsel the victims were robbed by two people wearing masks.  (*See id.* 124; *see also* Reply 24 ("Broughton informed both his public defender and trial counsel that a 911 recording existed . . . ." (alteration added)).  Even though he may not have raised the issue with the trial court until his sentencing hearing, before trial Petitioner appears to have believed the tape existed.  (*See* Report 124).  Nonetheless, he proceeded to trial knowing he did not have the 911-tape.  (*See id.* 125).  Because he apparently knew of the 911-tape and its contents prior to trial, Petitioner fails to state a *Brady* violation.  *See United States v. Manthei*, 979 F.2d 124, 127 (8th Cir. 1992) ("*Brady* is only violated if evidence is discovered, after the trial, of information which had been known to the prosecution but unknown to the defense." (citation omitted)).  Petitioner does not address Judge O'Sullivan's finding in his Objections.  (*See* Objs. 24–25).

Additionally, Petitioner fails to demonstrate the 911-call was favorable or prejudice ensued.  There is nothing in the record, except Petitioner's unsupported assertions, to show the 911-call would reveal the perpetrators were wearing masks.  (*See* Report 125 n.38).  The Court is dubious.  Petitioner claims to know about the 911-call and the fact the robbers wore masks because Detective Lopez apparently told him so during an interview.  (*See id.* 28 (citation omitted)).  Detective Lopez also purportedly told Petitioner "all this evidence that could have exonerated [him] was held back from trial."  (*Id.* 29 (alteration added; citation omitted)).  But without more, Petitioner's second-hand account of the contents of the 911-call is not enough to show the call would have been favorable.  For this same reason, Petitioner fails to demonstrate

prejudice, as there can be no reasonable possibility of a different outcome where the Court cannot even determine if the suppressed evidence would have likely contained the statements Petitioner claims it did.

Finally, Petitioner fails to demonstrate bad faith under *Trombetta*.  Judge O'Sullivan finds Petitioner fails to argue bad faith regarding the failure to preserve the 911-call.  (*See id.* 120; *see also* Mem. 31; Reply 25).  Petitioner does not address Judge O'Sullivan's finding in his Objections; in any event, after reviewing Petitioner's papers, the Court agrees bad faith regarding the destruction of the 911-call was not argued; and there is no evidence in the record to support such a finding.  *See Gayle*, 608 F. App'x at 790 (holding the defendant could not prevail on a due process claim where he only contended the police exhibited gross negligence in failing to preserve a recording of his post-arrest interview).

### E.    Ground Five

In Ground Five, Petitioner asserts his trial counsel was ineffective for failing to call his girlfriend's grandmother, Cynthia Hill ("Hill"), as an alibi witness.  (*See* Report 126).  At trial, Petitioner's girlfriend, Tommeisha Irby ("Irby"), testified she was with him from approximately noon until 10:42 p.m. the night of the robbery.  (*See id.*).  Petitioner contends "Ms. Hill would have provided corroborating testimony to Ms. Irby's testimony, which was impeached on an irrelevant matter regarding her pregnancy during the time." (Objs. 27).

Judge O'Sullivan concludes Petitioner is not entitled to relief for Ground Five because the claim is procedurally defaulted.  (*See* Report 132–33).  While Petitioner previously raised the claim in his second post-conviction motion, the claim was successive because it could have been raised in his initial post-conviction motion.  (*See id.* 134–35 (citing *Scrambling v. State*, 919 So. 2d 671, 672 (Fla. 5th DCA 2006))); *see also Raleigh v. Sec'y, Fla. Dep't of Corr.*, No. 14-14198,

CASE NO. 15-22925-CIV-ALTONAGA/O'Sullivan

2016 WL 3563623, at *12 (11th Cir. June 30, 2016) (stating claims not raised in initial post-conviction motion are procedurally defaulted).[17]

Petitioner does not appear to disagree Ground Five is procedurally defaulted, instead asking the Court grant him "leniency."  (Objs. 26).  To the extent Petitioner is asking the Court to excuse the default under *Martinez* and *Trevino* — despite not mentioning either (*see id.* 25–26) — the Court finds Petitioner's default should not be excused.

To show prejudice, Petitioner must demonstrate but for trial counsel's errors, the result of the proceeding would have been different.  *See DeYoung*, 609 F.3d at 1284 (citation omitted).  It is not enough to show the possibility of prejudice; rather the constitutional error must have "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  *Hamm*, 620 F. App'x at 762 (internal quotation marks, emphasis, and citation omitted).

Petitioner insists Hill would have corroborated Irby's testimony and "encouraged the jury to disregard any meaningless impeachment of Ms. Irby."  (Objs. 27).  There are numerous problems with this argument.  First, Petitioner fails to support his assertions regarding what Hill would have testified to with any evidence, instead making completely unsupported statements regarding what her testimony would have been.  (*See generally* Mem.; Reply; Objs.).  These self-serving, unsupported prognostications of what Hill's testimony would have been fail to demonstrate a reasonable possibility the proceeding would have been different if Hill had testified.  *Cf. Allison v. Sec'y, DOC*, No. 2:13-cv-861-FtM-38MRM, 2015 WL 4620558, at *9 (M.D. Fla. July 31, 2015) (stating a petitioner must at the very least submit an affidavit from an

---

[17] Judge O'Sullivan notes while the state court's denial of Petitioner's second post-conviction motion was based on "an erroneous view," *i.e.*, that Petitioner did not raise any new grounds, the state court's conclusion the motion was successive was correct, as Petitioner could have raised his claims in his first post-conviction motion.  (Report 134).  Accordingly, Ground Five is procedurally defaulted.

uncalled witness to prevail on an ineffective assistance of counsel claim for not calling the witness).

Second, even assuming Hill would have testified as Petitioner describes, Petitioner fails to show there is a reasonable probability the outcome of the trial would have been different.  As Respondent points out, Hill could have been attacked for bias, as she may have wanted to keep her granddaughter's boyfriend (Petitioner) out of jail, especially considering Irby was pregnant with Petitioner's child.  (*See* Resp. to Objs. 38–39).  And while Petitioner maintains Hill "would not have appeared as rattled as Irby" (Mem. 33), this is pure speculation.

Moreover, it is not clear how helpful Hill's testimony would have been in any event. Petitioner states Hill would have testified he was at her home until approximately 10:00 p.m. (*See* Objs. 27).  But the time of the robbery was not established at trial, as Steven only stated it occurred late at night.  (*See* Report 130 n.42).  Thus, Petitioner's involvement in the robbery could still have been consistent with Hill's purported testimony.  Accordingly, Petitioner fails to demonstrate prejudice, and the claim is procedurally defaulted.

Next, Petitioner argues he is entitled to relief because the state court failed to hold an evidentiary hearing.  (*See* Objs. 27–28).  As discussed regarding Ground Two, *supra*, Petitioner's argument is without merit.

Finally, even assuming Ground Five is not procedurally defaulted or such default should be excused, the claim should be denied on the merits.  Again, counsel's decision regarding which "witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one [courts] will seldom, if ever, second guess."  *Evans v. Sec'y, Fla. Dep't of Corr.*, 699 F.3d 1249, 1269 (11th Cir. 2012) (alteration added; internal quotation marks and citation omitted). Petitioner cannot show deficient performance by his trial counsel because he has failed to make

CASE NO. 15-22925-CIV-ALTONAGA/O'Sullivan

the requisite factual showing regarding Hill's testimony.  *See Allison*, 2015 WL 4620558, at *9.

"A petitioner cannot simply state that the testimony would have been favorable."  *Id.* (denying

claim of ineffective assistance for failure to call alibi witness).  And as discussed *supra*, it is not

clear how helpful Hill's testimony would have been in any event.  As a result, Petitioner has not

met his burden to show no competent counsel would have failed to call Hill as a witness.

Additionally, for the same reasons Petitioner cannot establish prejudice to excuse his

procedural default, he cannot establish prejudice under *Strickland*.

## IV.  EVIDENTIARY HEARING

In his Objections, Petitioner requests the Court remand the case to Judge O'Sullivan for

an evidentiary hearing.  (*See* Objs. 28).  A federal habeas court need not hold an evidentiary

hearing if doing so would not assist in the resolution of the claim.  *See Breedlove v. Moore*, 279

F.3d 952, 960 (11th Cir. 2002).  For the reasons already discussed in this Order, even if

Petitioner proved the facts he alleges at an evidentiary hearing, he would not be entitled to relief.

*See id.*

## V.  CERTIFICATE OF APPEALABILITY

Petitioner objects to Judge O'Sullivan's finding a certificate of appealability ("COA") is

not warranted (*see* Objs. 29), despite the Report not addressing the matter of a COA (*see*

*generally* Report).  Nonetheless, the Court now considers for the first time whether a COA

should issue.

A court may only issue a COA "if the applicant has made a substantial showing of the

denial of a constitutional right."  *Gonzalez v. Sec'y for Dep't of Corr.*, 366 F.3d 1253, 1267 (11th

Cir. 2004) (internal quotation marks and citation omitted).  A petitioner is not required to

establish entitlement to appellate relief for a COA to issue; rather, the question is whether

reasonable jurists could debate whether the petition should have been resolved in a different manner or the issues presented deserve encouragement to proceed further. *See id.* (citations omitted). Still, the "requirement is not a toothless one." *Id.* Where a habeas claim is resolved on procedural grounds, the petitioner must show "both a substantial showing that he had a valid claim of the denial of a constitutional right, and a substantial showing that the procedural ruling is wrong." *Id.* (citation omitted). "If either of the components is lacking, a court may deny the application for a certificate . . . without deciding whether the other one exists." *Id.* (alteration added; citations omitted).

Petitioner offers no reason why a COA should issue, other than the conclusory statement: "reasonable jurists would find the court's treatment of any of Petitioner's claims debatable and these issues are adequate to deserve further encouragement to proceed further." (Objs. 29–30). This is not persuasive argument; it is simply parroting the standard back to the Court. Petitioner is not entitled to a COA. Petitioner fails to make a substantial showing the Court's ruling Grounds One, Four (regarding Sanders's videotaped confession), and Five are procedurally defaulted is wrong. Additionally, Petitioner fails to demonstrate a valid claim for denial of a constitutional right in Grounds Two, Three, and Four (regarding the 911-call). For the reasons stated herein, reasonable jurors could not debate the resolution of these claims, and the claims have not been presented in such a manner as to be worthy of further encouragement.

## VI. CONCLUSION

In reviewing the disposition *de novo*, the undersigned has examined the Petition, Report, Objections, Response to Objections, record, and applicable law. In light of that review, as explained, the undersigned agrees with the Report's conclusions, albeit after a different analysis.

Accordingly, it is

CASE NO. 15-22925-CIV-ALTONAGA/O'Sullivan

**ORDERED AND ADJUDGED** that the Report [**ECF No. 18**] is **ACCEPTED AND ADOPTED** as follows:

1. The Objections [**ECF No. 25**] are **OVERRULED**.

2. The Petition [**ECF No. 1**] is **DENIED**.

3. A certificate of appealability shall not issue.

4. The Clerk of Court is directed to **CLOSE** this case, and any pending motions are **DENIED as moot**.

**DONE AND ORDERED** in Miami, Florida, this 6th day of September, 2016.

**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record